[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10302

_____

D. C. Docket No. 05-00281-CV-1-KD-B

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2009
THOMAS K. KAHN
CLERK

ERNESTINE MITCHELL,
OTIS MITCHELL,

Plaintiffs-Appellants,

versus

FORD MOTOR COMPANY,

Defendant-Appellee,

SOUTHERN CARE HOSPICE,
THE PHOENIX INSURANCE COMPANY,

Intervenor-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 9, 2009)

Before EDMONDSON, Chief Judge, TJOFLAT, Circuit Judge, and RYSKAMP,*
District Judge.

_____

*Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District
of Florida, sitting by designation.

PER CURIAM:

This appeal is about the necessity of an adequate and timely disclosure of the support for an expert witness opinion. Plaintiffs-Appellants Ernestine and Otis Mitchell ("Plaintiffs") appeal the district court's decision granting Defendant-Appellee Ford Motor Company's ("Ford") Motion to Strike and Second Motion for Summary Judgment. Plaintiffs' product liability action was brought under the Alabama Extended Manufacturer's Liability Doctrine as well as for negligence and wantonness. No reversible error has been shown; we affirm.

BACKGROUND

This case resulted from a rollover accident involving a 1997 Ford Explorer. The vehicle had been owned by several persons before it was purchased by Plaintiffs. One of the vehicle's prior owners was in an accident that severely damaged the vehicle and resulted in its being declared a "total loss." The vehicle was later salvaged and rebuilt by an auto recycler, sold to another person who obtained a "rebuilt title" from the State of Alabama, and then sold to Plaintiffs. At the time of sale to Plaintiffs, the vehicle's title was marked "rebuilt."[1]

_____

[1]According to the Alabama Department of Revenue:

A vehicle deemed a total loss ("totaled") by an insurance company results in the issuance of a salvage title for the vehicle. It becomes a "salvage vehicle" and

In 2003, Plaintiff Ernestine Mitchell was driving the vehicle on the highway. The right rear tire blew out. The vehicle suffered a rollover accident, and Mrs. Mitchell was severely injured. The vehicle was towed from the scene to a body shop.

Three days later, Plaintiff Otis Mitchell went to the body shop. He took photos of the vehicle. When the body shop would no longer store the vehicle, Mr. Mitchell arranged for it to be stored at a friend's repair shop. He told his friend that his lawyer had instructed him to protect and to preserve the vehicle.

In 2004, the owner of the repair shop died; and his son, who apparently did not know of the vehicle's evidentiary value, had the vehicle crushed and disposed of. Ford never had the opportunity to inspect the vehicle.

---

CANNOT be driven on the highways or have a valid license plate. It can be sold ("AS IS") to an automobile rebuilder to be used either for parts or to be restored ("rebuilt"). If restored, it must be inspected and ultimately a "rebuilt title" will be issued for the vehicle. A rebuilt vehicle with a rebuilt title CAN be driven on the highways.

If a salvage vehicle is retained by the owner, the owner must: (1) obtain a rebuilder's license so that he/she can legally restore the vehicle; (2) restore/rebuild the salvage vehicle "to the condition that existed before" the damage that totaled it; and (3) have it inspected by the Department of Revenue Automobile Inspection Section to make sure that the salvage vehicle is completely restored and that it contains no stolen parts. Under Alabama law, only an Alabama licensed rebuilder may apply for an inspection of a rebuilt vehicle. Additionally, the vehicle must be restored in Alabama and not in another state.

Alabama Dep't of Revenue, "Motor Vehicle Division, Vehicle Title FAQs," available at http://ador.state.al.us/motorvehicle/title_faq.html.

3

Ford argued that it was difficult to know whether the vehicle had been substantially altered before the accident because it had been previously "totaled" and rebuilt and because it had then been totally destroyed before Ford could inspect it. Ford filed its First Motion for Summary Judgment on the basis of spoilation and insufficiency of the evidence. This motion was denied. The district court explained that it would not enter a sanction of dismissal for spoilation in the absence of a showing of bad faith by the non-moving party; the district court gave Plaintiffs an opportunity to put together their case.

Plaintiffs proffered Dr. David Renfroe as an expert on the alleged defective design of the 1997 Ford Explorer model in question. Dr. Renfroe's technical opinion concluded that the result of a tire blowout would be a negative understeer gradient that would result in a defective oversteer condition on the vehicle. In May 2006, Plaintiffs submitted to Ford a Fed. R. Civ. P. 26(a)(2)[2] expert report of Dr.

---

[2] Fed. R. Civ. P. 26(a)(2) requires that a report, signed by the expert witness, must accompany the disclosure of each expert witness. This report must contain these things:

> *(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them;* (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

Renfroe. The report explained Dr. Renfroe's qualifications and disclosed that he relied on three scientific papers to support his opinion. Ford deposed Dr. Renfroe. During questioning, Dr. Renfroe repeatedly answered that his opinion was based on the three scientific papers provided in his Rule 26 disclosure.

In October 2007, the district court held a Daubert[3] hearing to determine if Dr. Renfroe's testimony met the federal standards for admissibility. Ford agreed that Dr. Renfroe was qualified to give an expert opinion on vehicle design defects, but Ford challenged the specific scientific foundation of his opinion in this particular case. During the course of the hearing, when Dr. Renfroe was questioned about what materials he had relied upon for his opinion, his explanations were not completely clear to the district court.

Following the hearing, Ford filed a Motion to Strike Plaintiffs' Exhibits 1 through 11 that were filed during and following the hearing; Ford claimed these exhibits were new information. Ford argued that Plaintiffs had failed to disclose all opinions and bases as required by Fed. R. Civ. P. 26(a) and failed to supplement their expert report with the additional bases as required by Fed. R. Civ. P. 26(e). Ford argued that letting in new information so late in the proceedings would be unfair and prejudicial to its case. Ford contended that, under Rules 26 and 37, the

---

[3]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

5

district court should exclude this new information.

The district court asked Plaintiffs to explain specifically on what bases Dr. Renfroe had relied to reach his conclusions and when those bases had been disclosed to Ford. That Dr. Renfroe had been given opportunities, during his deposition and otherwise before the <u>Daubert</u> hearing, to expand and supplement the references in his report and that he did not do so seemed clear to the district court. The district court then granted almost all parts[4] of Ford's Motion to Strike because Plaintiffs had failed to disclose in an adequately and timely way the bases for their expert's opinions: the expert offered evidence during and after the <u>Daubert</u> hearing that was not included in his deposition and Rule 26(a) disclosures and was not supplemented as required by Rule 26(e). After granting Ford's Motion to Strike, the district court turned to the remaining information on which Dr. Renfroe based his opinions and concluded that this information was not sufficient to support the opinions. The district court, therefore, struck Dr. Renfroe's testimony in full. Without Dr. Renfroe's testimony, what remained of Plaintiffs' evidence was insufficient to sustain their claims against Ford. So, the district court granted Ford's Second Motion for Summary Judgment.

---

[4]The district court denied Ford's Motion to Strike as to Exhibit 2 because that document had been referenced in the Rule 26 disclosure.

DISCUSSION

We review the district court's rulings on the admissibility of expert testimony for abuse of discretion. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999). Our review of a ruling under Fed. R. Civ. P. 37 "is sharply limited to a search for an abuse of discretion and a determination that the findings of the trial court are fully supported by the record." Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1146-47 (11th Cir. 2006) (internal quotations marks omitted). "We review de novo the argument that the sanctions imposed by the district court violated due process." Id. at 1147.

Fed. R. Civ. P. 26(a) and (e) require parties to disclose all bases of their experts' opinions and to supplement timely their expert disclosures upon discovery of an omission or as required by court order. Plaintiffs did not follow these requirements for the testimony of Dr. Renfroe. They did not fully disclose the bases of his expert opinions or supplement the disclosures when it became clear that his Rule 26 disclosures and deposition had not been sufficient. Seventeen months passed between the filing of his Rule 26 disclosures and the Daubert hearing. At the hearing, the expert offered additional bases for his opinions.

Plaintiffs acknowledge that the exclusion of Dr. Renfroe's testimony is fatal to their cause of action. They admit that without him, they are unable to establish a

7

prima facie case. Therefore, Plaintiffs' appeal is appropriately considered a challenge to the district court's grant of the Motion to Strike and not its grant of the Second Motion for Summary Judgment. Plaintiffs concede, in effect, that the grant of the Motion to Strike reasonably leads to the grant of the Second Motion for Summary Judgment. Therefore, the focus of our analysis is whether the district court abused its discretion in granting Ford's Motion to Strike.[5]

Fed. R. Civ. P. 37(c)(1) states that when "a party fails to provide information or identify a witness as required by [Fed. R. Civ. P.] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 37 allows the district court to exclude a witness as a sanction for a Rule 26 violation. "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Leathers v. Pfizer, Inc., 233 F.R.D. 687, 697 (N.D. Ga. 2006).

The district court granted Ford's Motion to Strike on the grounds that Dr.

---

[5]Plaintiffs also contend that granting the Motion to Strike violated their right to due process. They did not raise this argument at the district court, so we need not consider it here. See Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355, 360 (11th Cir. 1984). But even if we were to consider this argument, it fails. The transcript of an earlier unsuccessful Daubert hearing -- postponed because Dr. Renfroe was not present -- shows that the district court gave Plaintiffs adequate notice of the consequences of inadequately disclosing the bases of Dr. Renfroe's testimony. At this earlier hearing, the district court was reasonable and thorough in its explanation of the need for Plaintiffs to follow Rule 26(a) and (e).

Renfroe did not properly disclose the necessary scientific bases for his expert opinion in a timely fashion pursuant to Rule 26. This untimely disclosure left Ford unable to depose fully Dr. Renfroe or question what he relied on to form his opinions. Dr. Renfroe (1) did not timely disclose the scientific bases for his opinion when he was deposed by Ford's lawyers; (2) did not timely expand or supplement his Fed. R. Civ. P. 26(a) report despite opportunities to do so and with no good excuse for this failure; and (3) disclosed scientific bases in support of his expert testimony during and after the Daubert hearing that he did not refer to in his 26(a) report or deposition.

The district court described this case as "fraught with problems created (whether intentionally or unintentionally) by Plaintiffs." We agree. Our review is a limited and deferential review on a district court's decision about Fed. R. Civ. P. 37 and the admissibility of expert witness testimony. We conclude that the district court did not abuse its discretion when it granted Ford's Motion to Strike the bases in support of Dr. Renfroe's expert testimony that were bases first disclosed during and following the Daubert hearing and not specifically referred to earlier in the Rule 26(a) report or the deposition. We further conclude that the district court did not abuse its discretion when it struck Dr. Renfroe's testimony because the remaining information on which that testimony was based was insufficient to support it. Moreover, we conclude that the district court did not err when it

9

decided that Plaintiffs' case could not survive a Motion for Summary Judgment without Dr. Renfroe's expert testimony.[6]

AFFIRMED.

---

[6]Alternate grounds for affirming the grant of summary judgment probably exist, but we need not reach them.