Bonnie **BROWN**, Plaintiff,

v.

**NCL (BAHAMAS) LTD.,** Defendant.

**CASE NO. 15-21732-CIV-LENARD/GOODMAN**

United States District Court,
S.D. Florida.

June 6, 2016

M. Benjamin Murphey, Lawlor White & Murphey, LLP, Fort Lauderdale, FL, Glenn J. Holzberg, Law Offices of Glenn J. Holzberg, Miami, FL, for Plaintiff.

Amanda Jane Freilich, Darren Wayne Friedman, Jeffrey Eric Foreman, Amanda Jean Sharkey Ross, Foreman Friedman PA, Miami, FL, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NCL (BAHAMAS) LTD.'S *DAUBERT* MOTION AND MOTION TO STRIKE AND PRECLUDE PLAINTIFF FROM ELICITING EXPERT OPINIONS FROM DR. NICHOLAS SUITE (D.E. 60)

JOAN A. LENARD, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court on Defendant NCL (Bahamas) Ltd.'s Daubert Motion and Motion to Strike and Preclude Plaintiff from Eliciting Expert Opinions from Dr. Nicholas Suite, ("Motion," D.E. 60), filed March 17, 2016. Plaintiff, Bonnie Brown, filed a Response on April 6, 2016, ("Response," D.E. 72), to which Defendant filed a Reply on April 18, 2016, ("Reply," D.E. 76). Upon review of the Motion, Report, Reply, and the record, the Court finds as follows.

## I. Background

This is an action for personal injuries that Plaintiff Bonnie Brown sustained while a guest aboard one of Defendant's cruise ships. (See Compl., D.E. 1 ¶¶ 12-21.) The Complaint alleges that Plaintiff hit her head against a television cabinet when another guest caused her to fall. (Id. ¶ 21.)

Plaintiff hired Dr. Nicholas Suite, a licensed neurologist, to give an expert opinion regarding her injuries. (See Pl.'s Expert Disclosures, D.E. 60-1 at 2.) On November 10, 2015, Dr. Suite authored an "Initial Evaluation" in which he gave his "clinical impression" after performing a physical examination. (Id. at 48-51.) Dr. Suite diagnosed Plaintiff with (1) postconcussive syndrome, (2) cervical myofascial pain syndrome, (3) cervical herniated disc, and (4) posttraumatic headaches. (Id. at 51.) He further noted that Plaintiff needed to have definitive brain and cervical cord imaging, and that he would review those results. (Id.)

On February 17, 2016, Dr. Suite was deposed. (See D.E. 60-2.) At his deposition, Dr. Suite agreed that "a clinical impression is more or less a working diagnosis" and that at the time he gave his clinical impression he did not "have all the pieces to the puzzle." (Id. at 23.) He further admitted that at the time he prepared his Initial Evaluation he "did not have a final diagnosis." (Id. at 27.)

Dr. Suite stated that he later formed his "clinical diagnosis" after he had reviewed additional records, including two MRIs and an ear, nose, and throat doctor's report and impressions. (Id.) Dr. Suite testified that at the time he made his clinical impression he had no objective evidence of organic brain injury, but after reviewing the MRI results, he changed his diagnosis from postconcussive syndrome to traumatic brain injury (the other diagnoses did not change). (Id. at 47.) Dr. Suite acknowledged that he had not prepared a supplement or addendum to his Initial Evaluation, but that he planned to do so that week. (Id. at 28.) The traumatic brain injury diagnosis was not disclosed to Defendants until the February 17, 2016 deposition. (Reply at 3.)

In the instant Motion, Defendant seeks to strike and exclude Dr. Suite's opinion as untimely under Federal Rule of Civil Procedure 26(a)(2) (which governs the disclosure of expert testimony) and the Court's Scheduling Order, which established a January 20, 2016 deadline for Plaintiff to serve Defendant with the expert "reports or summaries required by Rule 26(a)(2)[,]" (Scheduling Order, D.E. 48 at 2). (Mot. at 2.) Alternatively, Defendant seeks to exclude Dr. Suite's opinion under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) as (1) speculative and unreliable, (2) unhelpful to the trier of fact, and (3) inaccurate and improper conclusions of law. (Mot. at 2-3.)

## II. Legal Standards

### a. Federal Rules of Civil Procedure 26 and 37

 Pursuant to Rule 26(a)(2), a party's expert disclosures must be accompanied by a written report that contains, inter alia, "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). Rule 26(e) requires expert disclosures to be supplemented or corrected upon discovery of an omission or as required by court order. Fed. R. Civ. P. 26(e)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." Managed Care Solutions, Inc. v. Essent Healthcare, Inc., No. 09–60351–CIV, 2010 WL 1837724, at *3 (S.D.Fla. May 3, 2010) (internal quotation marks omitted) (quoting Dyett v. N. Broward Hosp. Dist., No. 03–60804–CIV, 2004 WL 5320630, at *2 (S.D.Fla. Jan. 21, 2004) (quoting Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir.1998))); see also United States v. Batchelor–Robjohns, No. 03–20164–CIV, 2005 WL 1761429, at *2 (S.D.Fla. June 3, 2005).

### b. Federal Rule of Evidence 702 and Daubert

 Federal Rule of Evidence 702 provides the general rule regarding the admissibility of expert testimony. It states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires federal district courts to perform a "gatekeeping" function concerning the admissibility of scientific and technical evidence. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir.2004) (en banc) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 n. 7, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). "This function 'inherently require[s] the trial court to conduct an exacting analysis' of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." Id. (quoting McCorvey v. Baxter Health-

care Corp., 298 F.3d 1253, 1257 (11th Cir. 2002)).

■ When determining the admissibility of expert testimony under Rule 702, the Court engages in a three-part inquiry which considers whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir.1998) (citing Daubert, 509 U.S. at 589, 113 S.Ct. 2786). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion . . . ." Frazier, 387 F.3d at 1260.

■ District courts have broad discretion in deciding to admit or exclude expert testimony. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). However, "[a] district court's gatekeeper role 'is not intended to supplant the adversary system or the role of the jury.'" Id. (citing Maiz v. Virani, 253 F.3d 641, 666 (11th Cir.2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir.1999))). "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Id. (quoting Daubert, 509 U.S. at 596, 113 S.Ct. 2786).

## III. Discussion

Defendant seeks to exclude the "clinical impressions" Dr. Suite rendered in his "Initial Evaluation" as non-final and in-complete under Federal Rules of Civil Procedure 26(a) and 37(c). (Mot. at 3-8.) Alternatively, it seeks to exclude them as unreliable and unhelpful under Federal Rule of Evidence 702 and Daubert. (Id. at 8-14.)

Plaintiff argues that Dr. Suite's "Initial Evaluation" contained his medical opinions, despite being labeled "clinical impressions." (Resp. at 8.) She argues that "[t]his is too important and serious a case to be determined by semantical differences and technical oversights. Dr. Suite's opinions were clear at the time of his [Initial Evaluation], whether they were artfully stated as such or not." (Id.)

### a. Timeliness of opinion under Rule 26

■ Rule 26(a)(2)(D) requires a party to make the required expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The Court's Scheduling Order established a deadline of January 20, 2016 for Plaintiff to "furnish an expert witness list to Defendant/s, along with the reports or summaries required by Rule 26(a)(2) of the Federal Rules of Civil Procedure. Only those expert witnesses shall be permitted to testify." (D.E. 48 at 2.) In turn, Rule 26(a)(2) requires expert disclosures to be "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). "An expert report is deemed adequate when it is 'sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.'" Abdulla v. Klosinski, 898 F.Supp.2d 1348, 1357 (S.D.Ga.2012) (quoting Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J.1996)).

■ "The duty to disclose expert identities and opinions set out under Rule 26(a)(2) was implemented 'to accelerate

the exchange of basic information,' specifically to provide 'opposing parties [with] a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" Id. (quoting Fed. R. Civ. P. 26 advisory committee's note (1993)); see also Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir.2008) ("Rule 26 . . . is intended to provide opposing parties "reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."") (quoting Sherrod v. Lingle, 223 F.3d 605, 613 (7th Cir.2000) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's note)).

Here, Plaintiff disclosed Dr. Suite's "Initial Evaluation" before the deadline to disclose her expert reports; however, Dr. Suite admitted at his deposition that the Initial Evaluation contained his "clinical impression," which is "more or less a working diagnosis[.]" (Suite Dep. at 23.) He stated that he was awaiting "additional pieces of information" which he would evaluate before changing his "clinical impression" to a "clinical diagnosis." (Id. at 26.) After reviewing the additional materials, including two MRIs, Dr. Suite "moved the diagnosis from postconcussive syndrome to traumatic brain injury." (Id. at 46-47.) To date, Plaintiff has not disclosed a supplement or addendum to Dr. Suite's Initial Evaluation, or provided a final expert report reflecting the change in diagnosis. (See Reply at 2.) The first time Defendant heard that Dr. Suite had changed his diagnosis was at Dr. Suite's February 17, 2016 deposition—almost one month after the January 20, 2016 deadline to disclose a report containing "a complete statement of all opinions the witness will express," Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). (See Reply at 3.)

Accordingly, the Court finds that Plaintiff violated Rules 26(a)(2) by failing to provide a complete statement of all opinions Dr. Suite will express and the basis and reasons for them, and violated Rule 26(e) for failing to timely supplement or correct Dr. Suite's Initial Evaluation. Because Defendant did not know that Dr. Suite had changed his diagnosis until the deposition, Defendant was deprived of the opportunity to prepare for effective cross-examination. Defendant was also deprived of the opportunity to have its own expert rebut the new diagnosis. Defendant's deadline to disclose its expert's reports was February 2, 2016—fifteen days before Dr. Suite's deposition. (See D.E. 48 at 2.) Defendant's expert, Dr. Gelblum, rendered his report on February 1, 2016. (See D.E. 68-2.) Thus, the untimely disclosure of Dr. Suite's clinical diagnosis of traumatic brain injury deprived Defendant of an opportunity to arrange for a rebuttal.

For these reasons, Plaintiff's failure to comply with Rule 26(a) and (e) is grounds for exclusion under Rule 37(c). See Romero v. Drummond Co., 552 F.3d 1303, 1323 (11th Cir.2008). In Romero, the district court excluded the testimonies of three expert witnesses because the disclosure reports for the witnesses were noncompliant with Rule 26(a)(2)(B). 552 F.3d at 1323. On appeal, the plaintiffs conceded that one of the three disclosures was correctly excluded for being incomplete, but argued that the other two were improperly excluded. Id. The Eleventh Circuit disagreed, noting that the other two disclosures failed to state the expert's anticipated opinion "with sufficient specificity to allow [the defendant] to prepare for rebuttal or cross-examination." Id. The plaintiffs also argued that the district court should have allowed them to supplement their reports, but the Eleventh Circuit again disagreed, noting that the plaintiffs made their expert disclosures on the court-imposed deadline for doing so, and "[t]heir decision to make

their disclosures on the deadline ... also meant that there might be no opportunity to supplement the disclosures." Id. See also Mitchell v. Ford Motor Co., 318 Fed. Appx. 821, 824 (11th Cir.2009) (affirming exclusion of the plaintiff's expert for failure to timely disclose the scientific bases for his opinions which left the defendant unable to fully depose the expert "or question what he relied on to form his opinions").

▪ Here, it is clear that Dr. Suite's expert disclosure was incomplete insofar as he changed his "clinical impression" of postconcussive syndrome to a "clinical diagnosis" of traumatic brain injury after Plaintiff's deadline for providing expert reports. Pursuant to Rule 26(e), an incomplete expert disclosure must be timely supplemented. Where, as here, the Court has ordered a deadline for expert disclosures, the supplement is due by that deadline. See Romero, 552 F.3d at 1323–24. Plaintiff did not supplement Dr. Suite's report by the Court's January 20, 2016 deadline, and she has still not supplemented Dr. Suite's report. Pursuant to Rule 37(c), Plaintiff is not permitted to offer Dr. Suite's testimony "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Plaintiff does not argue that the failure was substantially justified or harmless, and the Court finds that it was neither substantially justified nor harmless. Plaintiff's failure deprived Defendant of the ability to prepare for effective cross-examination and rebuttal with respect to the traumatic brain injury diagnosis. See Romero, 552 F.3d at 1323; Reese, 527 F.3d at 1265; Mitchell, 318 Fed.Appx. at 825. Thus, Dr. Suite's opinion that Plaintiff suffered traumatic brain injury must be excluded.[1]

▪ However, the Court finds that Dr. Suite's other initial "impressions"—i.e., that Plaintiff suffered cervical myofascial pain syndrome, cervical herniated disc, and posttraumatic headaches—should not be excluded under Rule 37, as they were disclosed prior to Plaintiff's expert disclosure deadline and did not change. Rule 26(e) requires a supplement or correction when a party learns that an expert disclosure is "incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). Dr. Suite never deemed these impressions to be incomplete or incorrect, so no supplement or correction was warranted.

Although Defendant argues that these initial "impressions" were preliminary, non-final, and therefore incomplete opinions, the Court finds that excluding them under Rule 37 is unnecessary because any failure to render the same opinions in a final form is harmless. "Rule 26 ... is intended to provide opposing parties "reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."" Reese, 527 F.3d at 1265 (quoting Sherrod, 223 F.3d at 613 (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's note)). Here, Defendant was apprised of Dr. Suite's opinion that Plaintiff suffered cervical myofascial pain syndrome, cervical herniated disc, and posttraumatic headaches, and it had a reasonable opportunity to prepare for cross examination and rebuttal experts. Consequently, any failure to disclose the same diagnoses in "complete" or "final" form is harmless under Rule 37(c)(1).

### b. Daubert

▪ In the alternative, Defendant argues that the initial "impressions" should

---

1. Obviously, Dr. Suite's "clinical impression" that Plaintiff suffered from postconcussive syndrome must also be excluded, as he later deemed that impression to be incorrect but failed to timely notify Defendant.

be excluded under Daubert. (Mot. at 9.) It argues that Dr. Suite's initial "impressions" were reached using an unreliable methodology—specifically, relying on Plaintiff's subjective complaints during Dr. Suite's physical examination of her. (Id. at 9-14.) Dr. Suite testified at his deposition that he ordered MRI scans of the brain and the cervical spine "to try to obtain some kind of objective data for all of her complaints[.]" (Suite Dep. at 48-49.) After obtaining the results of the MRI, Dr. Suite made no changes to his initial "impressions" that Plaintiff suffered cervical myofascial pain syndrome, cervical herniated disc, and posttraumatic headache. (See id. at 50-54.)

The Court finds that Dr. Suite's initial "impressions" regarding Plaintiff's cervical myofascial pain syndrome, cervical herniated disc, and posttraumatic headache satisfy Daubert. "[A] treating physician often forms an opinion as to the cause of an injury or the extent to which it will persist in the future based upon his examination of a patient." Santoro v. Signature Constr., Inc., No. 00 Civ. 4595, 2002 WL 31059292, at *4 (S.D.N.Y. Sept. 16, 2002) (citing Mangla v. Univ. of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y.1996); Salas v. United States, 165 F.R.D. 31, 33 (W.D.N.Y.1995); Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D.Colo.1995)). "Recognizing this reality, even after Daubert, treating physicians have routinely been permitted to testify to determinations that they made in the course of providing treatment regarding the cause of an injury and its severity." Id. (citing Laski v. Bellwood, 132 F.3d 33 (6th Cir.1997) (unpublished table opinion); Zanowic v. Ashcroft, No. 97CIV.5292JGKHBP, 2002 WL 373229, at *2 (S.D.N.Y. Mar. 8, 2002); Brown v. Best Foods, Div. of CPC Int'l, Inc., 169 F.R.D. 385, 387 (N.D.Ala.1996). "[I]t appears that the opinions of treating physicians on injury causation—based on medical knowl-edge, physical examination, and patient histories—are routinely admitted in federal courts." Etherton v. Owners Ins. Co., 35 F.Supp.3d 1360, 1372 (D.Colo.3014) (citing Matlin v. Langkow, 65 Fed.Appx. 373, 384 (3d Cir.2003) (upholding admission of physician's testimony on causation where physician "examined [plaintiff], and, given [plaintiff's] statement to him about the automobile accident, reached the conclusion that the injury he diagnosed had been caused by the automobile accident"); Laski, 132 F.3d 33; Rivera v. United States, No. 10 Civ. 5767, 2012 WL 3132667, at *5 (S.D.N.Y. July 31, 2012); Santoro, 2002 WL 31059292, at *4).

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Daubert Motion to Strike and Preclude Plaintiff from Eliciting Expert Opinions from Dr. Nicholas Suite is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of June, 2016.