**ATMEL CORPORATION, Plaintiff,**

v.

**INFORMATION STORAGE DEVICES, INC., Defendant.**

**No. C95–01987 WHA.**

United States District Court,
N.D. California.

Sept. 29, 1999.

Robert T. Haslam, Keith R. Weed, Palo Alto, CA, Michael K. Plimack, Alyssa T. Koo, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for plaintiff.

Charlene M. Morrow, William Fenwick, Virginia K. DeMarchi, Fenwick & West, Palo Alto, CA, for defendant.

## ORDER IN LIMINE EXCLUDING IN PART TESTIMONY OF GEORGE KERN AND DENYING COUNTER–MOTION

ALSUP, District Judge.

### INTRODUCTION

This order prohibits expert George Kern from testifying on direct examination to certain conclusions expressed in the expert report required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure because those conclusions were based, at the time rendered, on an unreliable methodology. Under the normal operation of Rules 26 and 37 of the Federal Rules of Civil Procedure, an expert may not extend his or her direct testimony beyond the opinions and bases disclosed in the Rule 26(a)(2)(B) report and may not, on direct examination, cover new work done thereafter. Under Rule 702 of the Federal Rules of Evidence, an expert who intends to testify that some seventeen alleged trade secrets were not "generally known" or published during a period several years past must base such an opinion on more than his mere inability to recall having heard of them before the end of the relevant time period. An expert who consciously decides, at the suggestion of litigation counsel, not to review the relevant universe of literature or to consult colleagues familiar with techniques known and unknown during the relevant time period and who chooses instead merely to rest on such an inability to recall will not be permitted on direct examination to express broad opinions concerning what alleged secrets were and were not generally known. The fact that such an expert, as a matter of litigation tactics, chooses to wait and see what references the opposition discovers on its own and then prepares a rebuttal report thereon does not cure the omission in the Rule 26(a)(2)(B) report. Such a course re-

flects deliberate litigation tactics, not an inadvertent oversight or an excusable lapse. The disruption caused by such tactics is not harmless. To excuse such intentional conduct by allowing a new round of revised expert reports and a new round of depositions would invite further abuse. It would waste the effort already invested in such preparation. In the circumstances of this case, the expert will be precluded from testifying, on direct examination, as to what information was or was not generally known, was or was not published, or did or did not constitute trade secrets. The expert will, however, be permitted to testify more narrowly, as set forth below.

## STATEMENT

This action began in 1995, when plaintiff Atmel Corporation ("Atmel") sued defendant Information Storage Devices, Inc. ("ISD") for, among other things, misappropriation of trade secrets. ISD's present in limine motion concerns the proposed trial testimony of Atmel's expert George Kern in support of Atmel's trade secret claims. Mr. Kern has thirty years of practical experience in the semiconductor industry (Declaration of George Kern in Opposition to ISD's Motion in Limine to Exclude Proposed Testimony of George Kern ("Kern Decl."), Exh. A(1)). Mr. Kern's responsibilities have included, among other things, negotiating technology-licensing agreements, developing products, and developing product-manufacturing processes (*ibid.*).

Mr. Kern submitted an expert report December 23, 1998, under Rule 26(a)(2)(B). In that report he opined that Atmel's alleged trade secrets 7, 8, 10–15, 17–24, 32, and 34 were not generally known in the semiconductor industry, and that these seventeen items of information were, in fact, trade secrets (Expert Report of George Kern at ¶¶ 28–29, 33, 39, 43, 50, 55, 59, 65, 70, 75, 79, 83, 88, 92, 96, 101). His report further stated, as to some of the alleged trade secrets, that the information "had not been published," although he qualified that assertion by the phrase "to the best of my knowledge" (e.g., *id.* at ¶ 29).

Mr. Kern was purportedly retained as an independent expert to help the jury determine the extent to which numerous manufacturing processes were "not generally known" during a three-year period beginning ten years before the date of trial, i.e., 1989–92. In carrying out his assignment, however, Mr. Kern did not search the relevant literature before he formulated his Rule 26(a)(2)(B) report. Nor did he refresh his recollection by reviewing technical articles, books, patents, or other publications that he had read before the end of 1992. Nor did he consult colleagues knowledgeable on the subject and time frame. Mr. Kern testified as follows:

MS. DEMARCHI: Did you review any technical articles, books, patents or other technical publications before you formulated the opinions that you've expressed in your initial report, that we've marked as Exhibit 930, that Atmel's alleged trade secrets were not generally known?

MR. WEED: Object to the form.

MR. KERN: No.

MS. DEMARCHI: Why not?

MR. KERN: Primarily because the task I was faced with was forming an opinion, not doing any research in the area as to what I believed, or my opinion was, was the circumstances in that time frame relative to these specific items.

MS. DEMARCHI: Did you believe that your assigned task was to not do any research and to simply formulate an opinion in the absence of doing any research?

MR. WEED: Object to the question as argumentative.

MR. KERN: Yes.

MS. DEMARCHI: Why did you believe that was your task?

MR. WEED: Object as argumentative to the last question.

MR. KERN: Because I had a discussion with Mr. Weed about what his expectations of me

MS. DEMARCHI: What did Mr. Weed tell you his expectations were?

MR. KERN: His expectations were that I should evaluate these trade secrets and give my opinion on them, as I discussed earlier in the testimony, and not to spend a lot of time doing literature searches and research; that ISD would, in fact, if they believed there was literature that was counter to what my beliefs were, then we would address it in a rebuttal report.

\* \* \*

MS. DEMARCHI: Mr. Kern, how did you arrive at your opinion with respect to each of the alleged trade secrets that you considered that each was not published or was not generally known?

MR. KERN: Well, I don't think I had an opinion that they weren't published. I think not generally known. I arrived at my conclusions based on my familiarity with the field and what I had read during that time frame to determine whether I thought it was generally known or not.

MS. DEMARCHI: Did you go back and read the technical articles; books, patents or other publications that you had read during the 1989–92 time period?

MR. KERN: No, I didn't.

(Deposition Tr. of George Kern ("Kern Dep."), 136:25–137:7).

Mr. Kern concluded that "if [he] had not heard of the trade secret before this lawsuit that it was quite likely that it was not generally known in the EEPROM industry at any time" (*ibid.*).[1] In effect, Mr. Kern decided to quarantine himself from any information that might demonstrate the contrary. At the suggestion of litigation counsel, he decided simply to wait and see if the opposition came up with literature that did so.

When asked what he would have done to determine if someone had identified one of Atmel's alleged trade secrets, Mr. Kern testified as follows:

MS. DEMARCHI: If you wanted to know whether someone had identified gated diode breakdown as a cause of mass programming failures and had published that information, where would you look?

MR. KERN: I would look in—well—

MR. WEED: Object to the form of the question.

MR. KERN: I'd go to one of the technical libraries and start searching through a lot of the IEEE publications. I'd start doing a search through textbooks that were published in the area, and on the area, and textbooks published on EP-ROMS and nonvolatile memories generally.

MS. DEMARCHI: Do you mean EEPROMs?

MR. KERN: EEPROMs. Excuse me.

MS. DEMARCHI: Please continue.

MR. KERN: I would probably go out and talk to some people who were working in the field at the time that I respected, and ask them if they had any ideas as to what may or may not have been published. That's the procedure I would use.

MS. DEMARCHI: Did you do any of those things before submitting your expert reports in this case?

MR. WEED: Object to the form.

1. In his "Supplemental Expert Report of George Kern" submitted January 18, 1999, Mr. Kern stated that "[t]o the best of my recollection, the literature which I read in the normal course of my work in the 1989–1992 time frame" was: *EE Times, Electronic News, Semiconductor International, Solid State Technology, IEEE Transactions, IEEE Device Letters, Journal of Applied Physics, Journal of the Electrochemical Society,* IEDM conference proceedings, and IEEE conference proceedings. Mr. Kern did not address what literature he read prior to 1989.

MR. KERN: I believe I already stated I didn't.

MS. DEMARCHI: What IEEE publications would you consult?

MR. KERN: I don't know them all by name, but once you get into the library, you would—the Journal of Solid State Physics, possibly the Device.Physics publications, possibly some of the IDEM proceedings. I believe I actually have had several focus publications and conferences on nonvolatile memories. Those kinds of things. I don't know what the exhaustive list would be without going in and starting to look. I typically would take references from the references I found, and see if there was anyplace this kind of information would have been readily published.

(Kern Dep. at 319:3–320:18).

At the time Mr. Kern submitted his Rule 26(a)(2)(B) report, ISD's experts also submitted expert reports on Atmel's trade secret claims. ISD's experts included Dr. Else Kooi, Dr. Krishna–Saraswat, and Dr. Gadi Krieger. These experts cited references assertedly showing that Atmel's alleged trade secrets were, in fact, generally known.

On January 18, 1999, after having reviewed the reports of ISD's experts, Mr. Kern submitted a rebuttal expert report.[2] In this rebuttal report, he denied that the various references cited by ISD's experts showed that Atmel's alleged trade secrets had been generally known (e.g., Rebuttal Expert Report of George Kern at p. 3). His rebuttal report addressed at least some of the cited references, as well as the Atmel experts' arguments based on those references. ISD deposed Mr. Kern for six days regarding these reports, starting February 1, 1999.

By the second day of his deposition, Mr. Kern had read some of the articles discussed in the text of the ISD expert and rebuttal reports (Kern Decl., ¶ 6). He testified re-

garding these articles during the remaining days of his deposition (ibid.). Mr. Kern did not, however, read all of the articles cited in ISD's experts' reports. In one case, Mr. Kern did not read a cited article even though ISD's counsel pointed it out to him on the third day of his deposition, and again asked him about it on the fourth and sixth days of his deposition:

MS. DEMARCHI: Mr. Kern, you've been handed an article we've labeled 957. This is an 19[83] article by Geoffrey Gongwer and Keith Gudger entitled "A 16K E2PROM Using E2 Element Redundancy." This article is listed in Volume II to Dr. Kooi's initial report. Did you read this article?

MR. KERN: It was provided in Dr. Saraswat's rebuttal report?

MS. DEMARCHI: No. The question was: Did you read this article?

MR. KERN: I don't recall reading it.

(Kern Dep. at 511:12–23 (Feb 5, 1999)).

\* \* \* \* \* \*

MS. DEMARCHI: Have you read the 1983 article by Geoffrey Gongwer and Keith Gudger published in the IEEE Journal of Solid–State Circuits that we marked last week as 957, which I'm handing to you?

MR. KERN: No, I haven't.

(Kern Dep. at 620:3–9 (Feb. 10, 1999)).

\* \* \* \* \* \*

MS. DEMARCHI: Have you read the article marked as Exhibit 957 yet?

MR. KERN: No, I haven't.

(Kern Dep. at 1150:6–8 (Feb. 22, 1999)). Atmel's counsel have since conceded that this article in the *IEEE Journal of Solid State Circuits* disclosed two of Atmel's asserted trade secrets (Oral Argument on ISD's Motion for Summary Judgment (Apr. 23, 1999) at 45:16–18).

2. On January 31, 1999, Mr. Kern submitted "Supplemental Rebuttal Report of George Kern." This report included: (1) a description of Mr. Kern's experience with technology agree-

ments in technologies other than EPROM and EEPROM, and (2) comments on the Riga Analytical Labs, Inc. analysis that had been attached as an exhibit to an ISD expert's report.

ISD moved for summary judgment on Atmel's trade secret claims on March 12, 1999. A week later, ISD moved in limine to exclude the testimony of Mr. Kern on grounds similar to those advanced now. A week after that, Mr. Kern provided a declaration in opposition to ISD's summary judgment motion, opining that Atmel's alleged trade secrets were generally known (Kern Decl. at ¶ 7). In formulating the opinions expressed in his declaration, Mr. Kern reviewed and considered all the references discussed by ISD's experts in their reports and in their declarations in support of ISD's motion (*id.* at ¶ 6). For the first time, Mr. Kern also performed an independent search of articles, books, and patents related to the alleged trade secrets on which he had rendered opinions (*id.* at ¶ 9). Mr. Kern had not performed such a search before submitting his Rule 26(a)(2)(B) report, or any of his other expert reports. All of this additional work came after his six-day deposition and after the close of expert discovery.

In his opposition declaration, Mr. Kern discussed the IEEE article about which ISD counsel had earlier tried to ask him:

> "Since my deposition in this case, I have reviewed the article A 16K E2PROM Using E2 Element Redundancy by Geoffrey S. Gongwer and Keith H. Gudger. Reading this article, and the additional work I have done in this case, does not change my opinion that Atmel trade secrets 21 and 22 were not generally knownn [sic]; Atmel trade secrets 21 and 22 were not used in the industry at the time"

(George Kern's Declaration in Opposition to ISD's Motion for Summary Judgment (Mar. 26, 1999) at ¶ 113). As stated, counsel for Atmel subsequently admitted at that "[w]ith regard to trade secrets 21 and 22, as you earlier asked, we do admit that the Gongwer article discloses that, rather, those trade secrets, 21 and 22" (Oral Argument on ISD's Motion for Summary Judgment (Apr. 23, 1999) at 45:16–18).

On May 4, 1999, Judge Smith denied ISD's motion for summary judgment and stayed ISD's in limine motion to exclude Mr. Kern's testimony. Judge Smith reasoned that "[b]ecause this case will be reassigned to another judge for trial, it is more appropriate for that judge to rule on the motion-in-limine." Judge Smith did not indicate whether she had relied on Mr. Kern's declaration in denying ISD's motion for summary judgment.

After re-assignment of the case, ISD re-noticed the present motion, which seeks to exclude as unreliable Mr. Kern's proposed testimony as to what was generally known or published with respect to Atmel's alleged trade secrets. Atmel then filed a counter-motion to exclude the testimony of ISD's experts Dr. Kooi, Dr. Saraswat, and Dr. Krieger.

## DISCUSSION

Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B) requires an expert witness to submit a written report that "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor. . . ." An expert report is to be a detailed and complete statement of the testimony of the expert on direct examination. Fed. R.Civ.P. 26 Advisory Committee's Note to 1993 Amendment; *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998). FRCP 37(c)(1) provides that if a party's expert witness, without substantial justification, fails to disclose such information, then the party "shall not, unless such failure is harmless, be permitted to use [such information] as evidence at a trial, at a hearing, or on a motion. . . ."

Federal Rule of Evidence ("FRE") 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under FRE 702, the Court has a "gatekeeping" obligation of ensuring that expert testimony rests on a reliable foundation. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999). The Court has broad latitude in deciding whether expert methodology is reliable. *Id.* at 1171.

■ The Court holds that Mr. Kern's methodology for his conclusory statement on the "generally known" issue was insufficient and unreliable and that the missing foundation was not cured merely because Mr. Kern prepared a rebuttal report and, after his deposition and the close of expert discovery, conducted a literature search. The Court thus agrees with ISD that the Court should exclude direct opinion testimony by Mr. Kern that Atmel's alleged trade secrets (1) were not generally known or published and (2) were, in fact, trade secrets. FRE 702 requires the Court to exclude unreliable testimony. *Kumho Tire Co.*, 119 S.Ct. at 1174.

In their normal operation, Rules 26(a)(2)(B) and 37(c)(1) allow Mr. Kern, on direct examination, to rely on no more than he disclosed in his Rule 26(a)(2)(B) report. Mr. Kern based the opinions in his expert report solely on his unrefreshed recollection of his individual experience in the industry, long past, and not on a survey of literature or other research. He consciously refrained, at the direct suggestion of litigation counsel, from educating himself on the universe of literature in the relevant time frame or even determining what he himself had been aware of during the relevant period or what others in the industry generally knew; he chose instead to argue that if he personally could not now remember knowing about the seventeen claimed trade secrets prior to the end of 1992, then they must not have been generally known in that time frame. This ignorance-is-bliss strategy avoided the risk that Mr. Kern, in doing a professionally responsible search and review, might have discovered evidence affirmatively showing public knowledge of one or more alleged secrets. By waiting and seeing what the opposition came up with, Mr. Kern could limit the universe of potentially troubling references or evidence.

The Court finds that, when he served his Rule 26(a)(2)(B) report, Mr. Kern's methodology was inadequate to enable him to opine on what was "generally known" in the semiconductor industry. To be sure, publication is not synonymous with being "generally known" under California law. But publication was certainly an important factor in determining whether information had been public or not. Mr. Kern deliberately shielded himself from a body of highly relevant information. That Mr. Kern had no personal recall of having heard of Atmel's alleged trade secrets prior to 1992, moreover, did not mean that other members of the semiconductor community had not known of them or even that he himself had not once known of them; nor was the inference strong enough to allow Mr. Kern to opine generally on the subject. In these circumstances, the unrefreshed personal recollection of one person, even if he was once knowledgeable, could not alone be the basis for an expert opinion as to the general knowledge of an entire community almost a decade ago. The Court, therefore, excludes on direct examination Mr. Kern's proposed testimony that Atmel's alleged trade secrets were not generally known, that they were unpublished, and that they were, in fact, trade secrets.

■ It is true that, after the fact, Mr. Kern tried to rebut the articles advanced by the opposing experts and that, after his six-day deposition and the close of expert discovery, he conducted a literature search. This did not cure the intentional failure to do the work professionally required for his Rule 26(a)(2)(B) report. *See Salgado*, 150 F.3d at 743 ("[T]he district court was on solid ground in concluding that the effort to file a supplemental report containing the requisite information demonstrated that the violation of the Rule was an egregious one."). The error was not harmless. It was not "inadvertent" in the sense stated in the Advisory Committee's Notes to the 1993 amendment to Rule 37. It was gamesmanship. Atmel's expert decided, at counsel's direction, to sit back and wait to see what the other side came up with and then rebut that limited universe. To allow now Mr. Kern to testify on direct examination to matters deliberately ignored in his Rule 26(a)(2)(B) report would simply encourage litigants to evade the expert-disclosure rules. It would disrupt the orderly process of trial preparation to require a new round of expert reports and a new round of expert depositions. And the Court does not have resources to spare in order to manage cases in which counsel create foreseeable delay through violation of the rules. *See id.* at 742 ("[T]he court has a right, independent of the

parties, to conduct trial preparation in a manner that husbands appropriately the scarce judicial resources of that busy district.") In these circumstances, it is difficult to conclude that the tactic pursued by Mr. Kern and Atmel's counsel was harmless.

\* \* \* \* \* \*

While Mr. Kern may not opine as an expert as to what was "generally known" by the semiconductor industry, whether he may testify as to what he personally knew during the relevant period is a different issue. Mr. Kern's testimony that he did not know of Atmel's alleged trade secrets is relevant to whether those alleged trade secrets were generally known. Mr. Kern worked in the industry for many years and allegedly kept current with some literature. This testimony, unrefreshed though it is, tends to make more probable that Atmel's alleged trade secrets were not generally known. The Court will permit the jury to hear this limited evidence.

ISD argues that Atmel did not list Mr. Kern as a percipient witness. The Court is not persuaded that this should prevent Mr. Kern from giving the limited testimony described. Such testimony falls under the FRE 702 because it involves Mr. Kern's "specialized knowledge" and because it is directly related to his proposed expert testimony. Moreover, ISD deposed Mr. Kern regarding these facts. Mr. Kern did not hold back any facts in this regard and disclosed this basic direct testimony in his Rule 26(a)(2)(B) report. Under these circumstances, it is proper to allow an expert to give what could be termed fact testimony about his own specialized experience.

On direct examination, therefore, Mr. Kern may testify as to: (1) what he personally knew (and did not know) during the relevant period concerning the alleged trade secrets, and (2) his efforts to keep abreast of technologies in the semiconductor manufacturing industry during the relevant time—so long as they were disclosed in his Rule 26(a)(2)(B) report or his supplemental expert report filed January 18, 1999. As stated above, however, Mr. Kern may not on direct examination go further and state that Atmel's alleged trade secrets were not "generally known," or that they were unpublished, or that they were trade secrets.

If, however, ISD chooses to cross examine Mr. Kern about articles or other references relevant to whether Atmel's alleged trade secret were generally known, Mr. Kern may then testify on cross examination regarding them. If ISD chooses to examine its own experts on particular articles or other references, Mr. Kern may provide rebuttal testimony that addresses those articles or other references to the extent of his proposed testimony in his rebuttal report.

The Court does not, moreover, preclude Mr. Kern from testifying as to matters not the subject of ISD's motion, including matters for which Mr. Kern must *hypothetically assume* that Atmel's alleged trade secrets were not generally known. *See Taylor v. Burlington Northern Railroad Co.,* 787 F.2d 1309, 1317 (9th Cir.1986) (noting that counsel may ask experts hypothetical questions, and that the form of the question is left to the broad discretion of the trial court). For example, counsel may ask Mr. Kern whether Atmel's alleged trade secrets, if they were not generally known, would derive value from not being generally known. Mr. Kern's opinion in his Rule 26(a)(2)(B) report as to the value of the alleged trade secrets rests in large part on analysis separate from whether the alleged trade secrets were generally known. Mr. Kern's Rule 26(a)(2)(B) report describes what the alleged trade secrets are, how they can be used in the industry, and why they impart a benefit to their users. This information will help the jury if the jury determines that the alleged trade secrets were not generally known.

Mr. Kern may also testify on direct examination that, in his opinion, ISD misappropriated Atmel's alleged trade secrets. Mr. Kern addressed misappropriation in his Rule 26(a)(2)(B) report. Mr. Kern's opinions as to how ISD learned of and used Atmel's various alleged trade secrets are not based on his unreliable opinion that Atmel's alleged trade secrets were not generally known.

Mr. Kern may also testify on direct examination that, in his opinion, Atmel took reasonable efforts under the circumstances to

maintain the secrecy of the alleged trade secrets. Again, Mr. Kern can testify to Atmel's steps, and their reasonableness, without relying on his opinion that the alleged trade secrets were not generally known.

\* \* \* \* \* \*

Atmel's counter-motion in limine seeks to exclude the testimony of ISD's experts Dr. Kooi, Dr. Saraswat, and Dr. Krieger if the Court excludes the testimony of Mr. Kern.[3] Atmel argues that Dr. Kooi, Dr. Saraswat, and Dr. Krieger relied on the same methodology as Mr. Kern in formulating their opinions, and that, therefore, if the Court excludes Mr. Kern's testimony, so must it exclude ISD's experts' testimony. The Court rejects Atmel's argument for two reasons.

*First,* ISD's experts did not formulate the opinions in their Rule 26(a)(B)(2) reports in the same way that Mr. Kern formulated his. While Mr. Kern relied on his personal recollection as to what was generally known, ISD's experts actually reviewed and cited published references.

*Second,* ISD's experts were not under the same obligation as Mr. Kern. ISD's experts rendered opinions that Atmel's alleged trade secrets *were* generally known. ISD's experts only needed such references as would show that the alleged trade secrets were public. As ISD points out, its experts had to search only until they had identified published materials that they believed revealed Atmel's alleged trade secrets. To prove a positive, one example will suffice, but to prove a negative, a broader search is required. It made no difference whether these references were provided to the experts by counsel or whether the experts found them through independent searches.

The Court therefore DENIES Atmel's counter-motion. ISD's experts are, however, limited on direct examination to testifying to matters disclosed in their Rule 26(a)(2)(B) reports.

## CONCLUSION

For the foregoing reasons, ISD's motion in limine to exclude the proposed testimony of George Kern is GRANTED IN PART and DENIED IN PART. Mr. Kern may testify at trial only in a manner consistent with this opinion. Atmel's counter-motion in limine is DENIED.

**IT IS SO ORDERED.**

---

3. ISD challenges the propriety of Atmel's counter-motion under Local Rule 7–3(c) because the counter-motion was not filed "together with" Atmel's opposition. The Court nevertheless allows Atmel's counter-motion because Atmel filed notice three weeks before the hearing, thus allowing ISD sufficient time to respond.