**UNITED STATES of America and the State of Florida, ex rel Theodore A. Schiff, M.D., Plaintiffs,**

v.

**Gary L. MARDER, D.O., Allergy, Dermatology & Skin Cancer Center, Inc., a Florida corporation, Robert I. Kendall, M.D., and Kendall Medical Laboratory, Inc., a Florida corporation, Defendants.**

Case No. 1:13-cv-24503-KMM

United States District Court, S.D. Florida.

Signed July 7, 2016

Entered July 8, 2016

John C. Spaccarotella, United States Attorney, Miami, FL, Magdalena Anna Ozarowski, Florida Office of the Attorney General, Tallahassee, FL, Rebecca Haggar Sirkle, Office of the Attorney General, Orlando, FL, for Plaintiffs.

Jeffrey Henry Sloman, Ryan K. Stumphauzer, Stumphauzer & Sloman, PLLC, George Volsky, Sandra Jessica Millor, Jacqueline Marie Arango, Akerman LLP, Jared Edward Dwyer, Eva Merian Spahn, Greenberg Traurig, P.A., Miami, FL, for Defendants.

## OMNIBUS ORDER

K. MICHAEL MOORE, CHIEF
UNITED STATES DISTRICT JUDGE

THIS CAUSE came before the Court upon Defendants Allergy, Dermatology & Skin Cancer Center, Inc. ("ADSCC") and Gary Marder, D.O.'s ("Dr. Marder") (collectively, the "Marder Defendants") Motion for Continuance of Trial Date (ECF No. 230) and the Marder Defendants' Notice of Supplemental Authority (ECF No. 236) and Defendants Robert I. Kendall, M.D. and Kendall Medical Laboratory, Inc.'s (the "Kendall Defendants") Notice of Joinder in Notice of Supplemental Authority (ECF No. 238). The Government responded to the Marder Defendants' Motion (ECF No. 237) and the Marder Defendants filed a Reply (ECF No. 239). The Motion is now ripe for review. For the reasons set forth below, the Motion for Continuance of Trial Date (ECF No. 230) is DENIED as MOOT.

## I. BACKGROUND

On April 22, 2016, the Court entered an omnibus order that, *inter alia*, denied the Marder Defendants' Motion for Extension of Time to Conduct Discovery and further ordered the parties to complete the Court-mandated mediation process in this False Claims Act ("FCA") action. *See United States v. Marder*, No. 1:13–CV–24503–KMM, 183 F.Supp.3d 1231, 1232, 2016 WL 1614405, at *1 (S.D.Fla. Apr. 22, 2016) (*"Marder I"*). As previously mentioned, the Court issued the *Marder I* Order "to provide clarity to the parties, preserve judicial resources, and to ensure that this case continued on a path towards a 'just, speedy, and inexpensive determination' that is consistent with the Federal Rules of Civil Procedure." *Id.* (quoting Fed. R. Civ. P. 1).

Subsequent to the issuance of the April 22 Order, the Marder Defendants timely filed a Statement of Material Facts (ECF No. 204) on April 29, 2016 opposing the Government's summary judgment motion, but due to an apparently inadvertent mistake failed to include the actual response memorandum op-

posing summary judgment.[1] However, this oversight was brought to the Marder Defendants' attention by the Government and the Marder Defendants filed a motion requesting an extension of time the following day. *See* (ECF No. 203). Ultimately, the Court granted the Marder Defendants' motion on May 18, 2016 in its second omnibus order. *See United States v. Marder*, No. 1:13–CV–24503–KMM, 2016 WL 2897407, at *8–9, *8 n. 12 (S.D.Fla. May 18, 2016) ("*Marder II*") (determining that the Marder Defendants' "perplexing omission" was a result of excusable neglect that was "mortifying" given the high stakes of the case).

The Court primarily issued its order in *Marder II* "to prevent this cause of action from foundering into a procedural morass." *Id.* at *1. One step the Court took to untie the knots created by "the Marder Defendants' repeated procedural missteps and befuddling case management strategy" was to amend the trial schedule so that the Court could "fairly and efficiently resolve the Government's summary judgment motion." *Id.* at *9. The Court also denied the Marder Defendants' Motion for Extension of Time to File *Daubert* Motions and the Marder Defendants' various Motions to Strike.[2] *Id.* at *6–7.

Perhaps most pertinent to the instant order, the Court struck the Marder Defendants' proposed experts—Dr. David Goldberg and Lorraine Molinari—for the Marder Defendants' failure to comply with both the Federal Rules of Civil Procedure and the Court's October 23, 2015 scheduling order. *Id.* at *2–5. Additionally, the Court struck the Marder Defendants' statistician expert, Dr. Victor Pestien, on the basis that his testimony was untimely. *Id.* at *9.

On May 25, 2016, the Marder Defendants sought partial reconsideration of—and an expedited briefing schedule on—the Court's second omnibus order. *See* (ECF No. 224). According to the Marder Defendants, the Court's *Marder II* Order "effectively leaves the Marder Defendants without a substantial defense in this case." *Id.* at 2. In further support of their motion for reconsideration, the Marder Defendants asserted that striking their experts "is an extremely harsh sanction" given that "the Marder Defendants will likely not testify because of the pending parallel criminal investigation and these experts represent a substantial portion of the defense." *Id.* at 6.

On June 1, 2016, the Court granted in part and denied in part the Marder Defendants' motion for partial reconsideration. *See* (ECF No. 226). Without addressing the merits of the Marder Defendants' motion, the Court ordered an expedited briefing schedule to address the following issues:

1) The effect of the Marder Defendants' expert testimony on the [Government's] pending motion for summary judgment; (2) whether the Marder Defendants' proposed dates for discovery would necessitate the Court mooting out the summary judgment motions and issuing a continuance; 3) whether allowing Dr. Pestien to testify as a rebuttal expert would unduly prejudice the Government; 4) estimated length of trial; and 5) the estimated cost the Government has incurred since the close of discovery in dealing with the various issues addressed in the Court's previous Omnibus Orders (*See* ECF Nos. 196, 223).

*Id.* In doing so, the Court opined that it was "more immediately concerned with the prejudicial effect the Marder Defendants' expert testimony has on the Government's already ripe, and potentially case dispositive, summary judgment motion." *Id.* Additionally, the

---

1. The April 29 deadline set for the re-filing of a Statement of Material Facts and Response in Opposition to the Government's Summary Judgment Motion flowed from the Court's order striking the Marder Defendants' initial attempts for "failure to comply with Local Rule 56.1." *See Marder I*, 183 F.Supp.3d at 1238, 2016 WL 1614405, at *6.

2. The Court denied the Marder Defendants' Motions to Strike (ECF Nos. 180, 181) on the basis

that the motions were "untimely, procedurally improper, and fail[ed] to comply with Local Rule 7.1." *Marder II*, 2016 WL 2897407, at *7. As to the Motion for Extension of Time, the Court held that the Marder Defendants failed to demonstrate the "good cause" necessary to modify the Court's scheduling order to allow for an extension of time past the previously established deadline of March 25, 2016. *Id.* ("To allow an amendment of a scheduling order on such a basis would render the good cause standard useless.").

Court set forth the conditions upon which it would entertain a continuance of the cause of action if any party deemed it to be necessary. *Id.*

In response to the Court's order, the Government asserted that none of the Marder Defendants' proposed expert testimony would have any effect on the pending motion for summary judgment. *See* (ECF No. 227) at 2–14. Additionally, the Government argued that reopening discovery to allow the Marder Defendants to cure the deficiencies in their expert testimony would not only be "unfairly prejudicial," but would likely require the summary judgment briefing "to start over from the beginning." *Id.* at 15. Further, the Government claimed that allowing Dr. Pestien's testimony at this late stage "would be a substantial distraction just weeks before trial" and unduly prejudice the Government. *Id.* at 17. Lastly, the Government noted that it had spent approximately forty (40) hours "in dealing with the various issues addressed in the [C]ourt's previous omnibus orders" resulting in estimated costs of approximately $21,200. *Id.* at 19.

On the other hand, the Marder Defendants asserted that the proposed expert testimony undeniably creates a question of material fact that precludes the entry of summary judgment in the Government's favor. *See* (ECF No. 228) at 2. In fact, the Marder Defendants pointed to five (5) specific issues in the Government's summary judgment motion that are disputed by their proposed expert testimony. *Id.* at 5. As a result, the Marder Defendants claimed that "[s]triking those affidavits prejudices the Marder Defendants by taking away a portion of their defense to summary judgment." *Id.* Beyond the challenge to the Government's summary judgment motion through the use of expert testimony, the Marder Defendants also claimed that they have advanced approximately eight (8) other arguments that render summary judgment inappropriate. *Id.* at 5–6. Among those reasons, the Marder Defendants argued that "there is no undisputed evidence to prove that the Marder Defendants possessed the requisite scienter required under the FCA." *Id.* at 6.

As to whether additional briefing or a continuance of the trial date would be necessary based on the proposed reopening of expert discovery, the Marder Defendants offered that "a continuance would likely be in the best interest of all the parties and the Court, and would lead to greater judicial efficiency." *Id.* The Marder Defendants further suggested that mooting the Government's summary judgment motion—without prejudice and with leave to amend—could potentially narrow the issues for trial and conserve the parties' and the Court's resources. *Id.* at 6–7. Additionally, the Marder Defendants claimed that allowing Dr. Pestien to appear as a rebuttal expert despite the untimely nature of his testimony "would not unduly prejudice the Government." *Id.* at 7. Regarding the Government's estimated costs in dealing with the various post-deadline discovery issues, the Marder Defendants did not dispute the amount claimed. *Id.* at 8.

Immediately following their reply brief to the Court's initial order on the motion for partial reconsideration, the Marder Defendants filed a Motion to Continue the Trial Date. *See* (ECF No. 230). On June 17, 2016, the Government responded in opposition to continuance (ECF No. 237), to which the Marder Defendants replied. *See* (ECF No. 239). In the interim, the Marder Defendants also filed a Notice of Supplemental Authority based on a recent Supreme Court decision that the Kendall Defendants provided notice of their joinder. *See* (ECF Nos. 236, 238). On June 29, 2016, the Marder Defendants filed an additional Notice of Supplemental Authority arising out of a trial court's memorandum opinion and order in *United States of America, ex rel. Misty Wall v. Vista Hospice Care, Inc.*, No. 3:07–cv–00604–M, 2016 WL 3449833 (N.D.Tex. June 20, 2016). Having set forth the relevant background, the Court now enters the following order.

## II. LEGAL FRAMEWORK

Rule 16(b) requires that a court enter a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1), 3(A). Such orders "control the course of the action unless the court

modifies it," Fed. R. Civ. P. 16(d), and "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause requires a showing that the "schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir.1998) (quoting Fed. R. Civ. P. 16 Advisory Committee's Note); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) ("If [a] party was not diligent, the [good cause] inquiry should end.").

█ As scheduling orders set the expectations of the parties and the Court during the pretrial process, such orders "should not be ignored blithely nor trifled with, without some peril or consequence." *Hudson v. I.R.S.*, No. CIV.1:03CV172(TJM/RF), 2007 WL 2295048, at *10 (N.D.N.Y. Mar. 27, 2007); *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir.2004) ("[L]itigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril.") (internal citations and quotations omitted). Veritably, "a scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1." *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, No. 2:08–CV–00810, 2010 WL 4117050, at *1 (S.D.W.Va. Oct. 19, 2010) (internal citation and quotation omitted).

█ Of equal import to the pretrial process and effective case management is Federal Rule of Civil Procedure 26(a)(2)'s expert disclosure requirements. " 'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefore.'" *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir.2008) (quoting Fed. R. Civ. P. 26(a)(2)(B)). The expert report must also contain the following:

(ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The deposition of an expert may only occur after a complete expert report is provided. *See* Fed. R. Civ. P. 26(b)(4)(A).

█ Additionally, an expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). However, "a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14–CV–24277, 2016 WL 3102225, at *6 (S.D.Fla. June 2, 2016); *see also Rojas v. Marko Zaninovich, Inc.*, No. 1:09–CV–00705 AWI, 2011 WL 4375297, at *6 (E.D.Cal. Sept. 19, 2011) ("An expert's duty to supplement under Rule 26(e), is not a right to supplement at will."). "It is not mere 'supplementation' when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains actual reasoning." *Ullman v. Auto-Owners Mut. Ins. Co.*, No. 2:05–CV–1000, 2007 WL 1057397, at *4 (S.D.Ohio Apr. 5, 2007).

█ Pursuant to "Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with Rule 26(a) *unless the failure is substantially justified or is harmless.*" *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir.2008) (emphasis in original). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821, 824 (11th Cir.2009) (quotation omitted). For example, the Elev-

enth Circuit has held that a report that lacks "sufficient specificity" to allow an opposing party "to prepare for rebuttal or cross-examination" is properly stricken. *Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir.2008). Moreover, "[c]ourts routinely strike expert reports or exclude expert testimony which is not timely disclosed, even if the consequence is to preclude a party's entire claim or defense." *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13–23074–CIV, 2014 WL 3764126, at *1 (S.D.Fla. July 30, 2014).

## A. Dr. Goldberg and Lorraine Molinari's Expert Testimonies Remain Stricken

■ On March 2, 2016, the Government moved to strike the expert reports and expert testimony of Dr. David Goldberg and Lorraine Molinari pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure. *See* (ECF No. 132). The Marder Defendants claimed that the Government's motion was meritless since Dr. Goldberg and Ms. Molinari were timely disclosed in accordance with the Court's scheduling order. *See* (ECF No. 141) at 2. Further, the Marder Defendants argued that "it was the [G]overnment's sluggish production of discovery and last-minute unilateral scheduling ... that precluded the [G]overnment from being able to depose the defense's experts prior to the discovery cutoff." *Id.* at 4. Additionally, the Marder Defendants asserted that even if Dr. Goldberg's expert disclosure was incomplete "there was clearly no prejudice to the [G]overnment." *Id.*

In striking the Marder Defendants' expert testimony in its second omnibus order, the Court found the Marder Defendants arguments "unavailing, vacuous, and borderline malpractice." *Marder II* 2016 WL 2897407, at *4. The Court further noted that "the Marder Defendants fail[ed] to argue that their incomplete disclosure of Dr. Goldberg's expert report was substantially justified or harmless." *Id.* n. 5 ("Because they failed to address this issue, the Court declines to find either substantial justification or harmlessness."). As a result, the Court determined that "the Marder Defendants' inability to procure this discovery [wa]s a crisis of their own making." *Id.* (citation omitted).

Not to slay the slain, but the Marder Defendants' concept of civil litigation remains fatally flawed. By baldly asserting that the incomplete report provided by Dr. Goldberg is harmless, the Marder Defendants overlook the effects of their dilatory discovery efforts. To start with, the scheduling order set by the Court has been modified twice to date: Once on the parties' joint motion [3] and once due to the Court's need to control its docket. Reopening discovery at this stage in order to accommodate the Marder Defendants' untimely [4] and incomplete expert reports—with depositions to follow—would not only serve to reward the Marder Defendants for their indolence, but thoroughly prejudice the Government's preparation for trial. *See United States v. Twenty–Nine Pre–Columbian &*

3. On October 23, 2015, the Court found "good cause" to grant in part the parties' Joint Motion to Continue Trial (ECF No. 122) where "various issues have triggered the [parties'] need for additional time for expert discovery, both as to existing experts and possible new experts." *See* (ECF No. 123). In the affidavit supporting the Joint Motion to Continue, the parties expressly stated that "[t]he potential need for experts regarding the proper and applicable Medicare codes, proper record keeping and the efficacy of certain treatments has also grown in significant[sic] and import during the recent burst of discovery .... The significant potential need for the use of rebuttal experts has become much more evident." (ECF No. 122-1) ¶ 19. Yet, in the four and a half month window of extended discovery that the Court granted, no complete expert disclosures materialized.

4. In support of their motion for reconsideration, the Marder Defendants attach amended expert reports from Dr. Goldberg and Lorraine Molinari that are dated May 23, 2016 (Dr. Goldberg's report) and May 24, 2016 (Lorraine Molinari's report). *See* (ECF Nos. 224-1, 224-2). First, the record is devoid of a complete and timely expert disclosure of Lorraine Molinari prior to the report submitted in support of the Marder Defendants' partial motion for reconsideration. Moreover, by attempting to pass these delinquently filed expert reports off as "amended" or "supplemental," the Marder Defendants gravely misunderstand Rule 26(e)'s application. Even if the Court construed these untimely expert reports—filed two months after discovery closed—as supplemental reports, the Marder Defendants have unsurprisingly offered no viable excuse for their eleventh-hour supplementation.

*Colonial Artifacts from Peru*, No. 13–21697–CIV, 2015 WL 457860, at *3 (S.D.Fla. Feb. 3, 2015) ("While evidence that [claimant's expert] might present at trial could be important to Claimant's case, that fact alone cannot substantially justify his failure to meet the requirements of Rule 26 and the Court's Scheduling Order, nor can it sufficiently address the severe prejudice this failure has caused the Government.").

■ After all, "[t]he purpose of the rule governing expert witness disclosure requirements is to safeguard against surprise." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins. Co.*, No. 10–24310–CIV, 2011 WL 6372198, at *3 (S.D.Fla. Dec. 20, 2011) (citing *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir.1992) (rule designed to facilitate a "fair contest with the basic issues and facts disclosed to the fullest practical extent")). This purpose is thwarted by an incomplete expert disclosure in that whatever opinions and/or testimony that would be given by the Marder Defendants' proposed expert witnesses will necessarily be a surprise to the Government, who has not only been deprived of the opportunity to determine whether rebuttal experts are necessary but also deprived of the opportunity to investigate the qualifications of the Marder Defendants' experts and the bases for their opinions. Moreover, when an incomplete report—as was the one submitted by Dr. Goldberg—is so general and lacking in detail it neither provides a meaningful basis for determining the substance of the expert's opinion, nor does it provide a fair basis for expert discovery.[5] The Court is unconvinced that the Marder Defendants' failure to submit the required information about the experts' backgrounds and compensation was an oversight that the Marder Defendants should now be permitted to "bob" and "weave" around.

Another troubling facet to the Marder Defendants' tactics comes to light when one considers that the deadline for dispositive motions has long since passed (March 25, 2016) and the Court is now facing a fully ripe motion for summary judgment. Given the Court's need to enter a triptych of orders to keep this case on track, it seems that the Marder Defendants are simply "operating under the ideology that it's better to beg for forgiveness than to ask for permission" for all their various procedural missteps. *See Poole v. Carnival Corp.*, No. 14–20237–CIV, 2015 WL 1566415, at *6 (S.D.Fla. Apr. 8, 2015). However, the Court cannot in good conscience countenance such gamesmanship.

At this juncture, "[i]t would disrupt the orderly process of trial preparation to require a new round of expert reports and a new round of expert depositions. And the Court does not have resources to spare in order to manage cases in which counsel create foreseeable delay through violation of the rules." *See Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D.Cal. 1999). In effect, what the Marder Defendants have done is to paint the Court "into a corner in which it has to strike the [expert] disclosures or extend the discovery deadline." *G & G Closed Circuit Events, LLC v. Castillo*, No. 14 C 2073, 2016 WL 3551634, at *7 (N.D.Ill. June 30, 2016).

Recently, Judge Gottschall of the Northern District of Illinois aptly expressed the concerns that arise when litigants run afoul of a court's scheduling order by stating the following:

The parties do not "own" the discovery schedule, as they seem to think, suspending discovery on their own according to their whims. There is an overriding public interest in prompt resolution of legal disputes. There is not only a cost to the public at large, which is subsidizing a dispute resolution service, but to the other litigants waiting in the queue for the court's attention. As discovery drags on and on in one case, it takes time away from other cases. That concern is underscored here, where the parties seem to have needed almost constant supervision to resolve even the pettiest of disputes.

---

5. Given the assertion by the Marder Defendants of the importance of Dr. Goldberg's testimony to their defense against the Government's claimed damages in excess of ten (10) million dollars, as well as the amount the Marder Defendants have likely spent for Dr. Goldberg's testimony, the Court finds Marder's Counsel's egregious management of this case appalling considering the duties they owe to their client and the Court.

*Id.* at *8 (internal citations omitted). Since October 23, 2015, the Court has been pummeled with motion after motion that has essentially rendered it the Marder Defendants' cutman.[6] While the Court has found its way out of the corner, it appears "clearer and clearer that [the Marder Defendants]—or at least, counsel—may be trying to punch well above their weight class." *Id.* at *1. Accordingly, the expert testimony of Dr. David Goldberg and Ms. Lorraine Molinari remain stricken.

### B. Dr. Pestien's Untimely Expert Report

■ On May 18, 2016, the Court struck proposed rebuttal expert Dr. Victor C. Pestien on the basis that his testimony was untimely. *See Marder II*, 2016 WL 2897407, at *5 n. 8. In seeking reconsideration of that portion of the Court's order striking Dr. Pestien, the Marder Defendants assert that Dr. Pestien is merely a "rebuttal expert witness who was not retained until after the Government disclosed its statistician expert witness report and exhibits reviewed" on February 19, 2016. *See* (ECF No. 224) at 4. Given the voluminous materials presented by the Government's expert, the Marder Defendants claim that Dr. Pestien "was not able to conduct his review and analysis and prepare his affidavit until" May 12, 2016. *Id.* Once the affidavit was complete, the Marder Defendants disclosed Dr. Pestien's testimony to the Government on May 16, 2016 and provided notice to the Court of Dr. Pestien's testimony in support of the Marder Defendants' opposition to summary judgment on May 17, 2016. *See* (ECF Nos. 221, 222).

Under the Court's operative scheduling order—which was entered by way of the Court's order granting the Parties' Joint Motion to Continue Trial—all discovery in this matter was to be completed by March 5,

2016. *See* (ECF No. 123) ("The parties have until March 5, 2016 to complete all discovery in this matter."). Although the scheduling order did not directly address a deadline for expert discovery disclosure, given that the parties' justification for a continuance relied predominantly on the need to complete "expert discovery, including depositions of recently disclosed experts," *see* (ECF No. 122) at 6, one could readily reach the common sense conclusion that expert discovery fell within the parameters of the Court's scheduling order setting a deadline for the completion of *all discovery*.

Regardless of any potential ambiguity involving expert discovery deadlines, the Government timely disclosed on February 19, 2016 the expert witness for whom Dr. Pestien's testimony is intended to rebut. Therefore—under either the overarching deadline established by the Court's scheduling order or the one mandated by Federal Rule of Civil Procedure 26(2)(D)(ii)—the latest the Marder Defendants could have timely disclosed Dr. Pestien's rebuttal expert report was March 21, 2016. *See* Fed. R. Civ. P. 26(2)(D)(ii) (noting that a disclosure of evidence that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" is timely if filed "within 30 days after the other party's disclosure").

However, by the time the Marder Defendants disclosed Dr. Pestien's expert report, discovery had been closed for over two (2) months and the Government's Motion for Summary Judgment (ECF No. 146) was fully ripe for review.[7] Additionally, the operative scheduling order at that time mandated that the final pretrial conference was set for May 31, 2016 with jury trial to commence during the two-week trial period beginning June 13, 2016. *See* (ECF No. 123). Thus, if the Court

---

6. "[C]ut man" refers to "the member of a boxer's entourage responsible for treating cuts between rounds." *The Routledge Dictionary of Modern American Slang and Unconventional English* 265 (Tom Dalzell ed., 2009).

7. The Government's Reply in Support of its Motion for Summary Judgment was filed on May 6, 2016 or ten (10) days prior to the disclosure of Dr. Pestien's report. Additionally, the Court had already denied the Marder Defendants' Motion

for Extension of Time to Complete Discovery on April 22, 2016. *See* (ECF No. 196). Yet, twenty-four (24) days later, the Marder Defendants filed Dr. Pestien's expert report on the docket. Whether the Marder Defendants' dogged efforts to drag Dr. Pestien's testimony into the record are the result of willful disobedience of the Court's prior orders or a vigilant attempt to protect the Marder Defendants' interests is a determination left for another day.

had considered Dr. Pestien's May 16 report timely, the parties would have had to scramble to complete his deposition, while the Court was resolving the Government's summary judgment motion, all in less than fifteen (15) days and with increased costs to all parties. Perhaps this is not a Herculean task, but to say there exists no prejudice—or that the late disclosure was harmless—ignores the practical effects of the Marder Defendants' discovery noncompliance.

As cogently stated by the Seventh Circuit in the following passage, adherance to deadlines is an essential part of lawyering:

> We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored. The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines.

*Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir.1996).

Accordingly, Dr. Pestien's untimely expert report remains stricken from the record.

### III. SUPPLEMENTAL AUTHORITY BRIEFING REQUIRED

On June 16, 2016, the United States Supreme Court issued its opinion in a FCA qui tam action in which the Court unanimously held that the implied certification theory can be a basis for FCA liability. *Universal Health Servs., Inc. v. United States*, —— U.S. ——, 136 S.Ct. 1989, 1995, 195 L.Ed.2d 348 (2016). Justice Thomas, writing on behalf of the Court, reasoned that the implied certification theory can serve as a basis for liability when two conditions are met. *Id.* at 2001. According to Justice Thomas, when "the claim does not merely request payment, but also makes specific representations about the goods or services provided," the first condition is met. *Id.* Second, the implied certification theory applies when a "defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.*

However, in validating the implied certification theory, Justice Thomas went to great lengths to clarify the important role materiality plays in the requisite analysis. *Id.* at 2001–04. For example, Justice Thomas opined that not only is the materiality standard "demanding," but he also reiterated that the FCA does not serve as "a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 2003. Thus, under this line of reasoning, materiality "cannot be found where noncompliance is minor or insubstantial." *Id.*

Given these recent developments in FCA liability for government contractors, the Court finds it necessary to order supplemental briefing on the potential effects the Supreme Court's decision in *Universal Health Services* has on the Government's currently pending motion for summary judgment. Accordingly, the Government is instructed to file a supplemental brief in support of its motion for summary judgment addressing the issues raised in *Universal Health Services*. The supplemental brief shall not to exceed ten (10) pages and must be filed within fourteen days of the date of this Order. Further, any factual citations must be incorporated with the brief and provide specific citations to the record as the Court is "not required to ferret out delectable facts buried in a massive record." *Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir.2011). The Marder Defendants and Kendall Defendants can each then file an individual response supplemental brief not to exceed ten (10) pages with the same factual requirements no later than fourteen (14) days after the Government's supplemental brief is filed. Lastly, should the Government find a reply brief necessary, such a brief must: (1) not exceed five (5) pages; (2) be filed within seven (7) days of the Marder and Kendall Defendants supplemental briefs; and (3) also provide specific citations to the record that will afford the Court the ability to render a sound decision on the pending motion for summary judgment.

### IV. CONTINUANCE OF TRIAL DATE

Based on the issues presented throughout this order, the Court finds it necessary to sua

sponte continue and reset the dates for the final pretrial conference, calendar call, and jury trial of this matter according to the schedule set forth below. This will provide the Court ample time to review the parties' supplemental briefings and resolve the Government's pending motion for summary judgment (ECF No. 146) as well as Defendants' various motions in limine (ECF Nos. 144, 149). However, the Court is not reopening discovery, which given the record before the Court, undoubtedly would further delay the resolution of this case. In light of Federal Rule of Civil Procedure 1's mandate—and in the interests of reducing the logistical and monetary effect this continuance has on the parties, their attorneys, witnesses, and inevitably the Court—no further modifications of the trial calendar will be contemplated.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that:

1. The remaining trial hearings are reset for the following dates: Final Pretrial Conference is now scheduled for 11:00 AM on October 18, 2016; Calendar Call is now scheduled for 2:00 PM on October 27, 2016, and Jury Trial to commence at 9:00 AM during the two-week trial period beginning October 31, 2016.

2. The Marder Defendants' Motion for Continuance of Trial Date (ECF No. 230) is DENIED as MOOT. Additionally, the Marder Defendants' request for a hearing on the motion is also DENIED as MOOT.

3. All expert testimony from Dr. David Goldberg, Lorraine Molinari, and Dr. Victor Pestien is EXCLUDED from the trial in this case.

4. Supplemental Briefing will follow the schedule set forth in this Order.

5. Any consideration of possible sanctions pursuant to Rule 16(f) is STAYED pending resolution of this cause of action.

6. All other deadlines not expressly dealt with in this Order are otherwise unaffected.

DONE AND ORDERED in Chambers at Miami, Florida, this 7th day of July, 2016.